**O. M. BILHARZ MINING CO. et al. v. CLARK et al.**

No. 22594. Opinion Filed Nov. 3, 1931.

J. Fred Swanson, Ray McNaughton, and Arthur G. Croninger, for petitioners.

E. G. Avery and D. H. Cotten, for respondents.

ANDREWS, J. This is an original proceeding to review an award of the State Industrial Commission in favor of the claimant, respondent herein, against the petitioner herein.

The claimant sustained an accidental personal injury arising out of and in the course of his employment with the petitioner on the 24th day of September, 1926. He filed a claim which, among other things, recited "that as result of said injury he has wholly lost the use of his left eye" and "has permanently lost the sight of his left eye as a result of said injury." His first notice of injury, among other things, recited, "have lost the sight of my left eye by reason of accident." The report of physician to the State Industrial Commission, among other things, recited: "Pterygium in left eye; conjunctivitis in both eyes; existed some time." The claimant offered no medical testimony, but testified in his own behalf.

Dr. Cannon, the attending physician, testified on behalf of the petitioner as follows:

"A. These lens were not opaque at the time. His vision was down. His vision in the right eye at that time was 20/50ths or 85 per cent. Q. What was the vision in the left eye? A. The vision in the left eye was less than 20/200ths"

—and:

"A. The only thing he has as a result of the injury is this small linear corneal opacity over the pupil. I would not expect it to interfere materially in the loss of vision, or in the vision, it is so small, and I would say there is no connection with the cataract and the injury, because this injury as I stated, was minor, a foreign body. We do not see many. In fact, the majority of cases are like that. We remove it and see it the one time, and that is all there is to it. Q. What causes the loss of vision? A. This cataract"

—and:

"Q. And in your opinion the man is industrially blind in the left eye? A. Yes, at the time I saw him, and it might have progressed even more since I saw him. Q. Well, if he could not see your hand from a yard of his face before that—If he could not see your hand a yard from his face out of that eye, what would you say about that, would you say he is industrially blind? A. Oh, yes; I said 20/200ths. That means less than 10 per cent. vision when I examined him"

—and:

"Q. What did you say you found his

vision in the right eye to be? A. On December 11th, I found 20/50ths, or 85 per cent. at that time. The vision in the left eye less than 20/200ths, or less than 10 per cent."

On the 2nd of November, 1927, the State Industrial Commission found:

"(1) That claimant, H. H. Clark, sustained an accidental injury on the 24th day of September, 1926, arising out of and in the course of his employment with respondent herein;

"(2) That as a result of said accidental injury claimant (sic) a permanent loss of vision or sight of his left eye to the extent of 5 per cent. That any loss of vision beyond 5 per cent. is due to causes other than said aforementioned accidental injury"

—and made its award in favor of the claimant "for 5 per cent. permanent loss of vision of his left eye."

It will be noted that the State Industrial Commission did not determine the percentage of the loss of vision of the left eye. It determined that 5 per cent. of the loss of vision in the left eye was the result of the accidental injury sustained. The record shows that the remaining loss of vision was not due to the accidental injury. The State Industrial Commission found "that any loss of vision beyond 5 per cent. is due to causes other than said aforementioned accidental injury."

After the expiration of 30 days from the date of the award, the claimant filed a motion to vacate the award on the ground of newly discovered evidence, in which he said, "* * * The newly discovered evidence will show that claimant's disability is not due to a senile cataract, but is due wholly and solely from the accidental injury sustained on September 24, 1926." That motion was overruled. There was no proceeding to review the award or the order overruling the motion. The award and the order became final.

On April 22, 1931, the claimant filed a petition to reopen the cause and to grant further compensation, in which he said:

"3. Claimant further alleges that as a direct result and consequence of said injury, his said eye steadily grew worse and the vision therein continuously became more impaired until he has become permanently and totally blind in said eye and the vision completely and 100 per cent. impaired and lost."

Upon that application the State Industrial Commission heard further evidence. The claimant testified: "It grew worse all the time until it was plumb out." He further testified:

"Q. By Mr. Fenton: What is the condition of your eye at this time, Mr. Clark. A.

At that time I could see a person out in the room, put my hand up,—now I can't see a bit. Q. Did you have double vision at that time? A. Yes, sir—see double vision, two. Q. Are you able to get along all right, and able to get around? A. Yes, sir; I could get around, what I wanted,—Q. Did you testify at that time your eye had been growing worse since the accident. A. Yes, sir; I believe they have been getting worse since the accident, never had anything wrong with them before. Q. Until the time of the hearing, you had lost the most of your vision, up to that time? A. The most of it, not all of it. Q. Was the eye of no practical value? A. I could see some, I had lost the most of it. Q. Could you distinguish a person across the room? A. I could tell a person, I could not tell who he was. Q. And you could tell a person—at a distance of 20 feet? A. Yes, sir. Q. At that time? A. Yes, sir. That is all. By Judge Doyle: Now you are totally blind in that eye? A. Yes, sir; totally blind. Q. You have been referring to the left eye? A. Yes, sir. Q. You are totally blind? A. Yes, sir."

Dr. Pinnell testified:

"A. * * * On examination of the left eye I find there exists a complete opacity of the lens, forming what we call a cataract. That there exists a divergent squint, indicating an insufficiency of the internal rectus muscle. As to the cause of this cataract, it is difficult to state as there are several causes for cataracts, among which are injuries to the eye; constitutional diseases, and senile cataracts, that is, a cataract forming in old people without any apparent cause"

—and:

"Q. Doctor, may a cataract be due to numerous other causes, other than an injury? A. Yes, sir. Q. You stated that it can be due to other causes? A. Constriction—Q. Might affect both? A. No, sir. Q. Would not be a coincident—a material struck in the eye and took it out, would not be coincident? A. It could be a coincident. By Judge Doyle: Doctor, taking into consideration the history of this case as detailed by you and related by him, this trauma, is it your opinion it is due to that? A. That would be a hard question. Q. It is not usual? A. We have traumatic cataract following an injury. Q. Assuming the history is true? A. He has a divergent due to the insufficiency of the internal rectus muscle. I don't know what that is due to. Q. The injury to the rectus muscle is due to a traumatic injury? A. I don't think so. Q. What other causes? A. A natural condition. Q. Assuming the man had normal vision and had a traumatic injury, has foreign substances imbedded there that weakness, condition of that eye muscle, could be attributable to the traumatic injury? A. Not if the injury on the cornea, it would not have anything to do with the rectus muscle. Q. The vision is because of the weakness of the

muscle? A. Yes, sir. By Mr. Palmer: Does that cause a cataract, doctor A. No, sir."

The State Industrial Commission made its finding:

"(1) That, on the 24th day of September, 1926, the claimant was in the employment of the respondent and engaged in a hazardous occupation subject to and covered by the provisions of the Workmen's Compensation Law, and that on said date said claimant sustained an accidental injury, arising out of and in the course of his employment, consisting of an injury to the claimant's left eye.

"(2) That the average daily wage of the claimant at the time of said accident was $4 per day.

"(3) That, on the 2nd day of November, 1927, the Commission made an order allowing the claimant permanent loss of vision or sight to his left eye to the extent of five per cent.

"(4) That since said 2nd day of November, 1927, the condition of the claimant's eye has grown worse, and that he now has 100 per cent. permanent loss of vision or sight of the left eye"

—and made an award as follows:

"The Commission is of the opinion that the claimant is entitled to 100 weeks' compensation at the rate of $15.39 per week or a total sum of $1,539 less the sum of $76.96, or five weeks heretofore paid on account of five per cent. of the loss of the sight or vision in the left eye."

That award is before this court for review.

It will be noted that the State Industrial Commission found that the claimant "now has 100 per cent. permanent loss of vision or sight of the left eye." There is no dispute as to that. It will be noted that the State Industrial Commission nowhere found that the 100 per cent. permanent loss of vision of the left eye arose out of or in the course of the employment of the claimant by the petitioner. The first award was to the contrary and the record is to the contrary. There is no evidence in this record showing or tending to show that the claimant has lost 95 per cent. of the vision in the left eye since the first award. While the claimant testified that he has lost 100 per cent. of the vision of his left eye since the accident, neither he nor anyone else testified as to the percentage of loss of vision since the first award. This proceeding can be maintained and additional compensation awarded only by reason of a change in condition after the first award. The loss of vision since the first award could be no greater than the percentage of vision at the time of the first award. There was no proof at this hearing of the percentage of vision at the time of the first award.

The petitioner contends that:

"The Commission was without jurisdiction to make said findings or award for the reason that all matters connected therewith had already been fully and finally adjudicated."

The State Industrial Commission has jurisdiction to determine whether or not there has been a change in condition arising out of and in the course of the employment, and, if so, to make an additional award. Hughes Motor Co. v. Thomas, 149 Okla. 16, 299 P. 176; Oklahoma Pipe Line Co. v. State Industrial Commission, 149 Okla 162, 299 P. 180.

There is no evidence in the record to show such a change of condition. Under the testimony of the claimant, he had no more vision at the time of the first award than he now has. At the hearing on the first award, he testified:

"Q. And what, if any, vision do you have in your left eye now? A. Well, I have none at all. I cannot close this eye and see my hand or you in front of me. Q. Can you see a man's head a yard away from your face looking with your injured eye? A. No, sir; I cannot. Q. And you say your vision was good prior to the injury? A. Yes."

Under that testimony he was industrially blind at the time of the first award.

An award of the State Industrial Commission will be reversed by this court where there is no competent evidence reasonably tending to support the same. Hamilton v. Randall, 136 Okla. 170, 276 P. 705.

The contention of the claimant, as stated in his brief, is:

"It is a well-known fact that former members of the State Industrial Commission, in order to protect insurance carriers and employers, in many instances attempted to foreclose claimants forever from any further relief, made findings and awards of the same nature as the original award in this case. In other words, findings were made determining the disability to exist and declaring only a small per cent. of the disability to be due to the injury."

We know of no such fact and there is nothing in this record to warrant such a statement. The claimant had an ample remedy against the award by moving to reopen within 30 days, and he had an ample remedy against the award by a petition for review by this court. He availed himself of neither of those remedies. Doubtless the reason therefor was the rule followed by this court that an award will not be

disturbed by this court where there is competent evidence reasonably tending to support the same. This record shows competent evidence reasonably tending to support the first award. It shows no competent evidence reasonably tending to support the second award.

The award is reversed and the cause is remanded to the State Industrial Commission, with directions to vacate the same.

RILEY, HEFNER, CULLISON, SWINDALL, and McNEILL, JJ., concur. LESTER, C. J., CLARK, V. C. J., and KORNEGAY, J., dissent.

Note.—See under (1) 28 R. C. L. 829; R. C. L. Perm. Supp. p. 6255.